FILED
JAN 21 2010
Clerk, U.S. District and Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street, NW, Suite 8000<br>Washington, DC  20530<br><br>     Plaintiff,<br><br>  v.<br><br>SMITHFIELD FOODS, INC.,<br>200 Commerce Street<br>Smithfield, Virginia 23430<br><br>and<br><br>PREMIUM STANDARD FARMS, LLC,<br>Highway 65 N<br>c/o P.O. Box 194<br>Princeton, Missouri 64673<br><br>     Defendants. | Civil Action No.<br><br>Case: 1:10-cv-00120<br>Assigned To : Huvelle, Ellen S.<br>Assign. Date : 1/21/2010<br>Description: Antitrust |

## COMPLAINT

The United States of America, by its attorneys, acting under the direction of the Attorney General of the United States, brings this civil antitrust action to obtain civil penalties against Smithfield Foods, Inc. ("Smithfield") and Premium Standard Farms, LLC, the successor in interest to Premium Standard Farms, Inc., (collectively "Premium Standard") and alleges as follows:

1

## I. NATURE OF THE ACTION

1. The United States brings this action to recover civil penalties from the defendants for the violation of Section 7A of the Clayton Act, as amended, 15 U.S.C. § 18a, also commonly known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("Section 7A" or the "HSR Act"). On May 7, 2007, Smithfield acquired Premium Standard, Inc. Prior to the expiration of the statutory waiting period applicable to Smithfield's acquisition of Premium Standard, Smithfield exercised operational control over Premium Standard's hog procurement and thereby acquired beneficial ownership of a significant segment of Premium Standard's business. This conduct, called "gun jumping," is prohibited by Section 7A.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action and the defendants under 15 U.S.C. § 18a(g), and 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355(a).

3. Defendants Smithfield and Premium Standard are engaged in interstate commerce and in activity substantially affecting interstate commerce.

4. Defendant Smithfield is incorporated under the laws of the Commonwealth of Virginia, with its principal place of business in Smithfield, Virginia.

5. At all times relevant to this Complaint, Premium Standard Farms, Inc. was incorporated under the laws of Delaware, with its principal place of business in Kansas City, Missouri. On May 7, 2007, Smithfield acquired Premium Standard Farms, Inc. and Premium Standard Farms, Inc. became a wholly-owned subsidiary of Smithfield. On August, 2, 2007, Premium Standard Farms, Inc. was merged with and into PSF LLC, with the surviving entity being named Premium Standard Farms, LLC. Defendant Premium Standard Farms, LLC is the

successor in interest to Premium Standard Farms, Inc. and is incorporated under the laws of Delaware, with its principal place of business in Princeton, Missouri.

6. Defendants waive any objection to venue and personal jurisdiction in this judicial district for the specific and limited purpose of this Complaint.

### III. THE DEFENDANTS

7. Smithfield is the largest pork packer and processor and the largest hog producer in the United States. Prior to the merger, it had seven pork packing plants in the United States.

8. Premium Standard was the sixth-largest pork packer and processor, with two pork packing plants, and the second-largest hog producer in the United States.

9. At all times relevant to this Complaint, Smithfield and Premium Standard purchased and raised hogs for slaughter and sold fresh and processed pork throughout the United States, in competition with each other.

10. Until May 7, 2007, Smithfield and Premium Standard were each engaged in commerce or activity affecting commerce within the meaning of Section 1 of the Clayton Act, 15 U.S.C. § 12, and Section 7A(a)(1) of the Clayton Act, 15 U.S.C. § 18a(a)(1).

### IV. WAITING PERIOD REQUIREMENTS OF SECTION 7A OF THE CLAYTON ACT

11. Section 7A establishes a waiting period that allows federal antitrust agencies to investigate certain mergers and to file suit to enjoin those acquisitions that violate the antitrust laws. When Section 7A applies, it requires parties to file premerger notifications with the Department of Justice and the Federal Trade Commission and to supply additional information and documents to the investigating agency upon request. Section 7A requires that the merging

parties observe a designated waiting period before the acquiring person may hold, directly or indirectly, the voting securities or assets of the acquired person. A purpose of this waiting period is to preserve the acquired firm as an independent company in case the proposed acquisition is blocked or otherwise not consummated so that the competition that the antitrust laws protect does not suffer.

12. The notification and waiting period requirements of Section 7A apply to direct or indirect acquisitions that meet the HSR Act's thresholds. At all times relevant to this Complaint, the HSR Act's reporting and waiting period requirements applied to certain transactions that would have resulted in the acquiring person holding more than $56.7 million, and all transactions where the acquiring person would hold more than $226.8 million of the acquired person's voting securities and/or assets except for certain exempted transactions.

13. Section 801(c)(1) of the Premerger Notification Rules, 16 C.F.R. § 800 *et seq.*, defines "hold" to mean to have "beneficial ownership." The Statement of Basis and Purpose that accompanied the issuance of Section 801(c)(1), 43 Fed. Reg. 33450, 33458 (July 31, 1978), states that "the existence of beneficial ownership is determined in the context of the particular case with reference to the person or persons that enjoy the indicia of beneficial ownership."

14. Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), provides that any person, or any officer, director, or partner thereof, who fails to comply with any provision of the HSR Act is liable to the United States for a civil penalty for each day during which such person is in violation. For the time period relevant to the Complaint, the maximum amount of civil penalty is $11,000 per day, pursuant to the Debt Collection Improvement Act of 1996, Pub. L. 104-134, § 31001(s) (amending the Federal Civil Penalties Inflation Adjustment Act of 1990, 28

U.S.C. § 2461 note), and Federal Trade Commission Rule 1.98, 16 C.F.R. § 1.98, 61 Fed. Reg. 54548 (Oct. 21, 1996).

## V. THE MERGER

15.     The notification and waiting period requirements of Section 7A applied to Smithfield's acquisition of Premium Standard. On September 17, 2006, Smithfield and Premium Standard entered into an Agreement and Plan of Merger (the "Merger Agreement"). Under the Merger Agreement, Smithfield agreed to acquire Premium Standard for approximately $693 million in stock and cash and assume $117 million of Premium Standard's debt for a total purchase price of about $810 million. On October 6, 2006, Smithfield and Premium Standard filed premerger Notification and Report Forms required by Section 7A, marking the beginning of the Section 7A waiting period. The statutory 30-day waiting period was extended when the Antitrust Division issued requests for additional information on November 6, 2006. The waiting period expired on March 7, 2007, thirty days after both parties certified compliance with the requests. Smithfield completed its acquisition of Premium Standard on May 7, 2007.

16.     The Merger Agreement contained certain customary interim "conduct of business" provisions limiting Premium Standard's operations during the Section 7A waiting period to protect Smithfield's legitimate interests in maintaining Premium Standard's value without impairing Premium Standard's independence. These included provisions regarding Premium Standard's rights to assume new debt or financing, issue new voting securities and sell assets, as well as requirements that Premium Standard "carry on its business in the ordinary course consistent with past practice." The Merger Agreement also conditioned the closing of the transaction on the absence of any material adverse effect, as such agreements customarily do.

## VI. DEFENDANTS' CONDUCT

17.     Prior to its acquisition, Premium Standard purchased hogs from independent hog suppliers pursuant to contracts that ranged in length from one to five years. Procurement of hogs from independent hog suppliers was a focus of the Antitrust Division's investigation and Request for Additional Information. For 2008, Premium Standard projected purchasing hogs from about eleven independent hog producers.

18.     After executing the Merger Agreement, Premium Standard needed to continue to purchase hogs from independent hog producers in order to carry on its business in the ordinary course consistent with its past practice.

19.     After executing the Merger Agreement, Premium Standard stopped exercising independent business judgment in its hog purchases. Instead, beginning on or about September 20, 2006, Premium Standard submitted for Smithfield's consent each of the three contracts for hog purchases from an independent hog producer that arose during the Section 7A waiting period, including one contract accounting for less than one percent of Premium Standard's annual slaughter capacity. Together, the three multi-year contracts obligated Premium Standard to purchase, on an annual basis, between 400,000 to 475,000 hogs at a total cost ranging from approximately $57 million to $67 million. These hog procurement contracts were necessary to Premium Standard's ongoing business and entered into in the ordinary course. Each time Premium Standard sought consent, it provided Smithfield with the proposed contract terms, including the price to be paid, quantity to be purchased, and length of the contract.

## VII. VIOLATION OF SECTION 7A OF THE CLAYTON ACT

20. Through the conduct described in Paragraphs 17 through 19, Smithfield exercised operational control over a significant segment of Premium Standard's business prior to the expiration of the waiting period required by Section 7A. By controlling a significant segment of Premium Standard's business operations while having agreed to acquire Premium Standard, Smithfield acquired beneficial ownership of that significant segment of Premium Standard's business, and thus acquired and held those assets, valued in excess of the $56.7 million threshold then in effect, within the meaning of Section 7A on or about September 20, 2006.

21. Smithfield and Premium Standard were continuously in violation of Section 7A from on or about September 20, 2006, through the expiration of the statutory waiting period on March 7, 2007.

## VIII. PRAYER FOR RELIEF

The United States requests:

1. That the Court adjudge and decree that Smithfield and Premium Standard violated Section 7A of the HSR Act during the period beginning on September 20, 2006, and ending on March 7, 2007;

2. That each defendant pay to the United States an appropriate civil penalty as provided under Section 7A(g)(1) of the Clayton Act, 15 U.S.C. § 18a(g)(1), and 16 C.F.R. § 1.98(a);

3. That the United States have such other relief as the nature of the case may require and the Court may deem just and proper; and

    4.    That the United States recover its costs of this action.

Dated this 21st day of January 2010.

Respectfully Submitted,

_____
Christine A. Varney
Assistant Attorney General

_____
Molly S. Boast
Deputy Assistant Attorney General

_____
William F. Cavanaugh, Jr.
Deputy Assistant Attorney General

_____
J. Robert Kramer II
Director of Operations

_____
Donna N. Kooperstein
Chief
Transportation, Energy &
   Agriculture Section

_____
William H. Stallings
Assistant Chief
Transportation, Energy &
   Agriculture Section

_____
Joseph Chandra Mazumdar
Angela L. Hughes (D.C. Bar # 303420)
C. Alexander Hewes, Jr. (D.C. Bar #150284)
Trial Attorneys

U.S. Department of Justice
Antitrust Division
Transportation, Energy &
   Agriculture Section
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Telephone: (202) 353-1560
Facsimile: (202) 616-2441